IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

In Re: Jane Lee Wright, Debtor     No. 2:09-bk-73095
    Ch. 7

**MEMORANDUM OPINION**

Before the Court is the chapter 7 trustee's objection to the debtor's exemptions filed on August 12, 2009. The Court held a hearing on September 2, 2009, and took the matter under advisement. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014. For the reasons stated below, the Court overrules the trustee's objection.

**Background**

The debtor suffered a stroke that was attributed to her use of Bextra and/or Celebrex. As a result, the debtor qualified to be one of several plaintiffs in a mass tort action against the manufacturers of Bextra and Celebrex. The debtor joined the lawsuit in 2005. Two weeks before trial, the case settled, and the debtor entered into the settlement process. On June 24, 2009, the debtor filed her voluntary, chapter 7 bankruptcy petition and related schedules. The debtor listed the lawsuit on Schedule B, valued the lawsuit at an "Unknown" amount, and claimed the lawsuit exempt on Schedule C, also in an "Unknown" amount.

In July 2009, the debtor's attorneys in the Bextra/Celebrex lawsuit [Bextra/Celebrex Attorneys] sent the debtor a letter [Settlement Proceeds Letter] reporting that the Special Master awarded her a gross settlement amount of $75,000.00, from which medical liens, attorney fees, and other costs and expenses would be deducted, resulting in a net recovery to the debtor of approximately $23,836.68.[1] (Trustee's Ex. 4.) On July 22, 2009, the debtor amended Schedules B and C,

---

[1] The Settlement Proceeds Letter stated that $19,251.00 would be "held back" from the gross settlement award to cover possible medical liens; however, the debtor testified that her

valued the lawsuit at $23,837.00, and claimed $20,200.00 of that amount exempt under 11 U.S.C. § 522(d)(11)(D). On August 6, 2009, the debtor amended Schedule C, adding an additional exemption in the lawsuit in the amount of $9940.00 pursuant to § 522(d)(5). On August 12, 2009, the chapter 7 trustee filed an objection to the debtor's exemptions, arguing that the debtor was not entitled to her § 522(d)(11)(D) exemption.

**Findings of Fact and Conclusions of Law**

Pursuant to § 522(d)(11)(D), the debtor may exempt her right to receive compensation that is "traceable to . . . a payment, not to exceed $20,200, on account of *personal bodily injury, not including pain and suffering* or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent." 11 U.S.C. § 522(d)(11)(D)(emphasis added). The trustee made two arguments at the hearing as to why the debtor's exemption was improper: (1) that the debtor's settlement compensation was awarded, in whole or in part, on account of the debtor's pain or suffering; and (2) that the debtor's mass tort claim was awarded solely on account of her stroke, from which the debtor suffered no permanent bodily injuries.

As a general rule, compensation for pain or suffering is not exempt under § 522(d)(11)(D); *but see* Bankruptcy Exemption Manual § 5:12 (2009 ed.)(citing to bankruptcy cases in which the court allowed an exemption for compensation on account of pain and suffering as long as it was related to a bodily injury). Section § 522(d)(11)(D) was "designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings." 11 U.S.C. § 522, leg. his. and cmt. (citing H.R. Rep. No. 95-595, at 362 (1977)). Some courts have found that in order to take advantage of the § 522(d)(11)(D) exemption, "the debtor must have suffered at least 'appreciable' or 'cognizable' physical injury." *In re Scotti*, 245 B.R. 17, 20 (Bankr. D.N.J. 2000)(citing *In re Barner*, 239 B.R. 139, 142 (Bankr. W.D. Ky. 1999) and *In re Ciotta*, 222 B.R. 626, 633 (Bankr. C.D. Cal. 1998)(stating that "fright,

---

medical bills totaled a maximum of approximately $5000.00. Therefore, the debtor's ultimate net recovery will be greater than the $23,836.68 amount.

embarrassment, and nervousness" are pain and/or suffering, not bodily injuries)). The trustee has the burden of proving that the debtor's exemption has not been properly claimed. Fed. R. Bankr. P. 4003(c). The property is exempt unless the trustee proves by a "preponderance of the evidence that the exemption should be disallowed." *In re Whitson*, 319 B.R. 614, 617 (Bankr. E.D. Ark. 2005). If the Court must speculate as to whether a portion of the settlement proceeds was improperly claimed as exempt, the trustee's burden is not met. *Id*. The Court has two sources from which to determine how the debtor's gross settlement award was calculated: (1) the debtor's testimony, and (2) the Settlement Proceeds Letter.

The debtor testified that she found out about the mass tort litigation by calling a toll-free telephone number she saw on television. When she called the telephone number, she spoke with an attorney, whom she told that she had used Bextra and Celebrex and subsequently had a stroke. The debtor stated that based on the stroke, "they thought [she] had a case." The debtor testified that as a result of her Bextra and/or Celebrex use and the subsequent stroke, she experienced facial numbness, which later subsided. In response to the trustee's question regarding whether she had told her Bextra/Celebrex Attorneys about any pain and suffering, she stated "yes," and added that she had "short term memory [loss]," five blood clots, and that she must remain on certain medications in order to avoid more blood clots and another stroke. She also testified that she submitted her medical bills to her Bextra/Celebrex Attorneys.[2]

Other than the Settlement Proceeds Letter, the debtor testified that she did not receive any information explaining her settlement award. The Settlement Proceeds Letter states that the Special Master's award was made "after his evaluation of the facts of [the debtor's] specific case and the documentation of [the debtor's] injury. He evaluated proof of product usage, proof of injury, and all Plaintiff Fact Sheets that were submitted." (Trustee's Ex. 4.) The Settlement Proceeds Letter also states:

---

[2] The debtor listed several claims for medical bills on Schedule F, and testified that some of those bills were on account of injuries and conditions not related to her use of Bextra and/or Celebrex.

3

> In order for you to qualify for a settlement award, the Special Master had to verify proof for each of the following:
> (1) Bextra and/or Celebrex use; and
> (2) Some compensable injury
>
> Compensable injuries included:
> (a) Cardiovascular Injury
> (b) Other injury you allege is a direct result of your ingestion of either Bextra or Celebrex and which can be established through your medical records    or, in certain limited instances, by way of affidavit.

(Trustee's Ex. 4.) Factors that "tended to discount an award" included "pre-existing clotting or cardio-vascular abnormalities . . . and pre-existing medical conditions." (Trustee's Ex. 4.) While the Settlement Proceeds Letter included an "Itemization of Disbursement," it only itemized the deductions for medical liens and costs, and did not apportion the debtor's settlement award according to the debtor's "compensable injuries."

Based on the debtor's testimony and the Settlement Proceeds Letter, the Court finds that the trustee did not meet his burden of proving that any part of the debtor's gross settlement award was on account of pain and suffering. Although the debtor characterized her injuries as "pain and suffering," and not "long-term bodily injuries," this characterization is inconsistent with the facts to which the debtor testified. The debtor's facial numbness that resulted from the stroke, the debtor's blood clots, and her increased risk of blood clots are physical damages to the debtor's body that, according to her uncontroverted testimony, were caused by her use of Bextra and/or Celebrex. *See Scotti*, 245 B.R. at 20-21 (finding that the debtor suffered a personal bodily injury when his doctor "inadvertently injected a needle into his spine," causing the debtor to suffer headaches and loss of movement in his arms and legs); Black's Law Dictionary (8th ed. 2004)(defining "bodily injury" as "[p]hysical damage to a person's body"). The characterization the debtor gave to her injuries does not change their nature--her body has been weakened to the point where she has an increased risk of stroke, she had a stroke, and these are physical injuries regardless of any attendant pain and suffering.

In addition, the Settlement Proceeds Letter stated that in order for the debtor to qualify for an

4

award, the Special Master had to determine that she had used Bextra and/or Celebrex, had suffered "compensable injuries," and that the debtor's pre-existing injuries were taken into consideration in discounting her award. The Settlement Proceeds Letter did not expressly state that pain or suffering were "compensable injuries" or that they were factors taken into consideration in making the award determination. While the debtor had pain and suffering traceable to her Bextra and/or Celebrex use, there is simply no evidence of what amount of the gross settlement award, if any, was awarded on account of her pain and suffering. Based on this lack of evidence before the Court, the trustee has failed to meet his burden to show that the debtor's claimed exemption under § 522(d)(11)(D) is improper.

The trustee's second argument is that the debtor based her mass tort claim on the stroke alone, from which she suffered no permanent injury. Some courts require an injury to be permanent for a debtor to claim the § 522(d)(11)(D) exemption. *See In re Marcus*, 172 B.R. 502, 505 (Bankr. D.Conn. 1994); *but see Ciotta*, 222 B.R. at 632 (stating that "the overwhelming majority of cases analyzing the federal exemption statute do not require that the 'personal bodily injury' suffered be permanent"). However, the Court does not have to address this issue because the record before the Court does not support the trustee's argument that the gross settlement award was based solely on the stroke. The Court does not have before it any relevant pleadings from the mass tort litigation, medical bills submitted to her Bextra/Celebrex Attorneys, or any other evidence to show that the Special Master based the gross settlement award solely on account of the stroke to the exclusion of her other injuries caused by her use of Bextra and/or Celebrex. The debtor's testimony regarding her injuries, what caused them, and the basis of her mass tort claim is inconsistent. For example, during the trustee's questioning, the debtor testified that the blood clots were long-term injuries resulting from the stroke, and then later testified that she had no long-term injuries resulting from the stroke.[3] Without reliable evidence that supports the trustee's claim that the award was based solely on account of the stroke, the trustee has not met

---

[3] However, the debtor's equivocation was not out of an intent to deceive the Court; rather, it did not sound like she fully understood the trustee's questions or the specifics of her mass tort claim.

his burden to show that the debtor's exemption under § 522(d)(11)(D) is improper0

**Conclusion**

Through her testimony and the Settlement Proceeds Letter, the debtor demonstrated at trial that she had a right to receive the settlement award because of a personal bodily injury. The trustee failed to show that any of the settlement award was on account of the debtor's pain or suffering or that it was otherwise awarded for an injury not within the ambit § 522(d)(11)(D). Therefore, the debtor's claimed exemption under § 522(d)(11)(D) is proper, and the Court overrules the trustee's objection.

IT IS SO ORDERED.

October 21, 2009
DATE

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc:   Christian W. Frank, attorney for the debtor
      R. Ray Fulmer, II, chapter 7 trustee
      U.S. Trustee

EOD 10/21/2009
by L Schacherbauer